WILLOW STREET ASSOCIATES LLP

v.

BOARD OF TAX ASSESSMENT
REVIEW, City of Providence
et al.

Phebe Street Associates LLP

v.

Board of Tax Assessment Review,
City of Providence et al.

Property Advisory Exchange

v.

Board of Tax Assessment Review,
City of Providence et al.

No. 2001–125–Appeal.

Supreme Court of Rhode Island.

June 5, 2002.

Arthur M. Read, II, North Scituate, for Plaintiff.

Richard G. Riendeau, Providence, Kenneth B. Chiavarini, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

Denial of relief from a property-tax assessment is the focus of this appeal. The plaintiffs, Willow Street Associates LLP, Phebe Street Associates LLP, and Property Advisory Exchange, appeal from a Superior Court judgment entered in favor of the defendant City of Providence (city) dismissing their consolidated petitions for relief from tax assessments on certain parcels of real estate they owned in the city. They contend that the trial justice erred in rejecting their expert's appraisal methodology. They also assert that the trial justice erred in admitting the testimony of the city's tax assessor, Thomas P. Rossi, and the city's tax-assessment records concerning the properties in question.

After a prebriefing conference, a single justice of this Court ordered the parties to show cause why the appeal should not be summarily decided. Because they have not done so, we proceed to decide the appeal at this time.

The plaintiffs are three limited partnerships, organized to take advantage of certain tax incentives for low-income housing developments. An entity called the Property Advisory Group served as a general partner for all these limited partnerships. The plaintiff Willow Street Associates LLP owned the "Marvin Gardens" housing development at 141 Oak Street, 21 Marvin Street, and 157 Willow Street in Providence. The plaintiff Phebe Street Associates LLP owned the "Arbor Glen Apartments" housing development at 18 Phebe Street, 88 East Drive, and 795 Admiral Street in Providence. The plaintiff Property Advisory Exchange owned the housing development "Cathedral Square II" at 491 Westminster Street in Providence. The plaintiffs contested the city's tax-valuation assessments for each of the above low-income housing developments for the year ending December 31, 1995. Before applying exemptions, the city assessed Marvin Gardens at $3,827,600; Arbor Glen Apartments at $4,302,913; and Cathedral Square II at $3,225,000.

The plaintiffs appealed the assessments to the city's Board of Tax Assessment Review (board). After the board denied plaintiffs' appeals, they appealed the board's decision to the Superior Court. Later, a justice of that court consolidated their separate petitions for a bench trial. At trial, John Bernard Bentz (Bentz),

president of the Property Advisory Group, testified about the tax credits available for the above housing developments and about how the rules adopted by the federal Department of Housing and Urban Development (HUD) and the Rhode Island Housing and Mortgage Finance Corporation (RIHMFC) restrict the use of low-income housing properties. ·Bentz testified that these restrictive rules make it virtually impossible for owners to sell the properties at a fair-market price because the properties must continue to be used for low-income housing. Scott Nebergall, a tax attorney with the law firm of Edwards & Angell, concurred that the owners' ability to sell the properties was severely limited because of the financial penalties the owners would suffer under applicable HUD and RIHMFC regulations if the properties were no longer used for low-income housing.

Gretchen Maurer, chief financial officer for Property Advisory Group, identified the rental income and expenses for the above properties, as outlined in various documents. Next, Thomas P. Rossi (Rossi), the city tax assessor, took the stand. Because of the city's failure to file more responsive answers to interrogatories, the trial justice strictly limited Rossi's testimony, merely allowing him to identify the city's tax-assessment documents.[1] Thus, Rossi simply explained the notations on pertinent city tax records in the case and reviewed computer printouts and "buff cards" for the subject properties. These documents were admitted under the public-records hearsay exception. Rossi testified that these documents were available for the public to examine during normal city office hours.

The final witness at trial was Roy Schaeffer (Schaeffer), an expert witness for plaintiffs. Schaeffer was a certified real estate appraiser. He testified that the usual valuation techniques did not work for the subject properties because of the various regulatory restrictions hindering the use and sale of the properties. Instead, Schaeffer analyzed the rental income of the properties, then valued the properties based on a tax load that would amount to no more than 8 percent of the rental income. He then applied the provisions of G.L.1956 § 44–5–13.11. This statute limited the municipal-property tax to 8 percent of the property's gross scheduled rental income, but only for low-income-housing developments to which the city had issued an occupancy permit on or after January 1, 1995. Although the statute was not strictly applicable to plaintiffs' properties (because the city had issued their certificates of occupancy before 1995), Schaeffer reasoned that, in his opinion, all low-income properties in the city should receive the benefit of the statute to maintain a uniform tax. Under cross-examination, however, Schaeffer conceded that he was more concerned in his approach with a percentage of the properties' income stream, as opposed to a valuation of the properties themselves. He also conceded that his appraisal methodology was not

1. A June 29, 2000, consent order signed by the parties stated that "[b]y agreement of the parties and by order of Court [the city] will answer the plaintiff's interrogatories within thirty days hereafter. Defendant [city] shall not be permitted to introduce any evidence not provided in its answers to interrogatories." The city's answers to the interrogatories listed only Rossi as an expected witness and stated that it intended "to introduce the records of the Tax Assessor including the computer print-out[s] of the subject propert[ies] and the buff-card[s]." The plaintiffs did not seek to depose Rossi, nor did they move to compel the city to provide more responsive answers to the interrogatories. Nevertheless, the consent order limited Rossi's testimony to the information provided in the city's answers to interrogatories.

recognized under the Uniform Standards of Professional Appraisal Practice. Schaeffer further admitted that he did not take into account that Cathedral Square II sold for $4 million a few years before 1995 and that Arbor Glen Apartments sold for $2.8 million in the same time period. He also did not apply the Internal Revenue Service's formula for valuation of the subject properties.

The trial justice ruled that plaintiffs' failure to file an account as required under § 44–5–15 and § 44–5–16 did not bar them from proceeding with this action. He found that the city had waived this issue by waiting until only a few months before trial before attempting to raise it. The trial justice reasoned that this issue was akin to an affirmative defense, which the city had waived when it failed to include this defense in its pleadings and when another Superior Court justice refused to allow the city to amend its answer.

Nevertheless, in a written decision, the trial justice upheld the city's tax assessment. He found that Schaeffer's use of § 44–5–13.11 in valuing the properties was impermissible because this statute specifically applied only to low-income housing with certificates of occupancy issued on or after January 1, 1995. Consequently, the court rejected plaintiffs' expert evidence on the valuation of the properties. The trial justice found that plaintiffs had not met their burden in challenging the assessments. Because the city's tax assessment enjoyed a presumption of validity, the court ruled that the assessments should be upheld. The trial justice then entered judgment in favor of the city.

On appeal, plaintiffs argue that the trial justice erred in rejecting their expert's valuation of the properties. They contend that Schaeffer correctly used the principles of § 44–5–13.11 in arriving at his own valuation of the properties. They insist

that no rational basis supports the use of a different tax-assessment scheme for two identical affordable-housing developments, solely on the grounds that the city issued a post–1995 certificate of occupancy to one of them. They also point out that Schaeffer was justified in using his new valuation methodology because the classic valuation techniques did not apply to low-income housing. They further suggest that the trial justice erred in admitting the city's tax records and Rossi's testimony into evidence. They maintain that the city did not turn over these records before trial and that it did not comply with the consent order of June 29, 2000. Therefore, they argue, because of the city's failure to comply with the June 29 discovery provisions in the consent order, it should not have been allowed to introduce any evidence pertaining to the tax records.

The city responds that the findings of the trial justice must be accorded great deference. It argues that the trial justice correctly determined that plaintiffs had failed to meet their burden of proof because their expert did not employ an acceptable and creditable method of valuing the properties in question. The city also points to plaintiffs' failure to file an account as warranting dismissal of their action. Finally, the city notes that the tax records introduced into evidence were available to plaintiffs during the city's usual office hours. It notes that Rossi did not testify as an expert on valuation but merely explained the meaning of various notations on the city's tax records.

 Determining the fair market value of property is a discretionary act delegated by the General Assembly to the individual municipal assessors. *Cummings v. Shorey*, 761 A.2d 680, 686–87 (R.I.2000). "[T]ax assessors are entitled to a presumption that they have performed their official acts properly until the con-

trary is proven." *Ferland Corp. v. Bouchard,* 626 A.2d 210, 215 (R.I.1993) (quoting *Kargman v. Jacobs,* 122 R.I. 720, 731, 411 A.2d 1326, 1332 (1980) (*Kargman II*)). "The burden of proof is on the taxpayer to establish * * * that defendant assessor has set a value on the subject property that is greater than its full and fair cash value." *Id.* (quoting *Kargman v. Jacobs,* 113 R.I. 696, 703, 325 A.2d 543, 547 (1974) (*Kargman I*)). A trial justice has the authority to accept the opinion of one valuation expert and reject the opinion of another valuation expert. *Ferland Corp.,* 626 A.2d at 215–16. This Court has upheld a municipal tax assessment when the assessor has used one of the recognized methods of valuation in establishing the fair market value of the property. *See Kargman I,* 113 R.I. at 704, 325 A.2d at 547–48.

In *Kargman II,* this Court upheld a trial justice's finding that the valuation by the property owner's expert using an income approach was superior to the municipality's valuation. In this case, however, the trial justice did not abuse his discretion in rejecting plaintiffs' expert testimony, which was not based on a recognized income-valuation approach. On the contrary, plaintiffs' expert hinged his valuation on the inapplicable 8 percent limitation contained in § 44–5–13.11. The plaintiffs' expert essentially admitted that his analysis did not constitute a true valuation of the properties. Therefore, the trial justice did not err in determining that plaintiffs failed to meet their burden of proof.

Although plaintiffs have attempted to raise the issue of tax uniformity in their testimony and in their written submission to this Court, they did not specifically raise a constitutional challenge to § 44–5–13.11 on the basis of the statute's cutoff date and did not specifically press a constitutional claim below. Thus, they have waived this

issue on appeal. *See Bouchard v. Clark,* 581 A.2d 715, 716–17 (R.I.1990).

With respect to the admission of Rossi's testimony and the city's tax records into evidence, we conclude that the trial justice did not commit reversible error in this respect. " '[T]he admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion.' " *Graff v. Motta,* 748 A.2d 249, 252 (R.I.2000). An appellant also must demonstrate that the admitted evidence created an impermissible prejudicial effect on the fact-finder. *Tinney v. Tinney,* 770 A.2d 420, 434 (R.I.2001). Because the plaintiffs failed to overcome the presumption that the city's assessments were valid, Rossi's testimony about the notations on the tax records and, indeed, the records themselves could not have had a prejudicial effect on the outcome. Moreover, the plaintiffs' attempt to keep these records from admission into evidence because of the city's asserted discovery violations was misconceived for two reasons: (1) the plaintiffs failed to move to compel more responsive answers to their discovery requests or for sanctions under the discovery rules before the trial began; and (2) the tax assessment enjoyed a presumption of validity, independent of whether the city was able to introduce these records into evidence. In any event, as provided in the consent order, the trial justice strictly limited Rossi's testimony, such that its admission together with the tax records fell within the limited parameters established by the trial justice and did not contravene the terms of the parties' consent order.

For these reasons, we deny the appeal and affirm the Superior Court's judgment.