**Pierre DeBOURGKNECHT**

v.

**Thomas ROSSI, in his capacity as Tax Assessor for the City of Providence.**

**No. 2001–22–Appeal.**

Supreme Court of Rhode Island.

June 13, 2002.

Timothy T. More, Providence, for Plaintiff.

Richard Riendeau, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff, Pierre deBourgknecht, appeals from a Superior Court judgment in favor of the defendant, Thomas Rossi, in his capacity as Tax Assessor for the City of Providence. The plaintiff alleges that the 1995 real estate tax assessments on his property were in excess of the property's full and fair cash value.

The matter came before a single justice of this Court, who ordered the parties to show cause why the appeal should not summarily be decided. After hearing their arguments and considering their legal memoranda, we conclude that cause has not been shown and proceed summarily to decide the appeal.

The plaintiff owns property identified as assessor's plat 20, lot no. 22, known as the Old Providence Journal Building (lot no. 22), and assessor's plat 20, lot no. 169, known as the Lapham Building (lot no. 169). In 1987, the revaluation assessments were $3,780,600 for lot no. 22 and $4,449,300 for lot no. 169. In 1992, the assessments were reduced to $2,975,100 for lot no. 22 and $3,728,600 for lot no. 169, and these assessments were carried forward to subsequent years.

In 1994 the plaintiff objected to the 1993 assessments and filed an appeal with the Providence Board of Tax Review. The board reduced the assessment on lot no. 22 from $2,975,100 to $1,032,800 and on lot no. 169 from $3,728,600 to $1,927,000. The reductions were designated for "1 year only."

In 1995 the parcels were revalued to reflect the 1992 valuations, which were $2,975,100 for lot no. 22 (the Old Providence Journal Building) and $3,728,600 for lot no. 169 (the Lapham Building). The plaintiff objected to these valuations and appealed to the board. The board reduced the valuations to $2,509,000 for lot no. 22 and $3,296,200 for lot no. 169. Thereafter, pursuant to G.L.1956 § 44–5–26, the plaintiff filed the instant complaint in the Superior Court, claiming that the assessments made upon his real estate exceeded the full and fair cash value of each of his two properties.

At a hearing on the taxpayer's complaint before a Superior Court trial justice sitting without a jury on August 31, 2000 and September 1, 2000, the plaintiff testified that there were substantial changes in the rental income from the Lapham Building from 1994 through 1996. He testified that the building was almost entirely occupied when he purchased it, but that a tenant, Mutual Benefit Life Insurance Company, which had occupied eighty percent of the building, moved out in 1994, and he was not able to find a replacement tenant. The plaintiff also testified that when he purchased the Old Providence Journal Building that it too was almost completely occupied, but that the building occupancy became a "small fraction of full occupancy"

as tenants began leaving in 1993 and continued to leave through 1997. The plaintiff testified that he had not made any major physical alterations to the building.

On September 29, 2000, the trial justice issued a written decision concluding that the plaintiff had failed to establish that the assessor had set a value on the subject property that exceeded its full and fair cash value. A judgment was entered in favor of the defendant tax assessor on October 18, 2000, and the plaintiff timely appealed.

On appeal, the plaintiff asserts that the trial justice erred in concluding from the trial evidence that the tax assessments placed upon the plaintiff's two properties by the city tax assessor did not exceed their full and fair cash value. The plaintiff further contends that the doctrine of *res judicata* precluded the city tax assessor from retrying the fairness of the 1994 valuations litigated and determined by the Providence Board of Tax Review. The plaintiff additionally avers that the 1995 assessments were excessive because the valuations for prior and subsequent years were substantially lower, and there were no value-enhancing changes made to the property. Finally, he contends that the doctrine of administrative finality required that the board grant the same reduction in 1995 that it granted in 1994 because the requested relief was the same and there was no material change in circumstances to the property.

■ "This Court has consistently held that 'the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.'" *Associated Builders & Contractors of Rhode Island, Inc. v. Department of Administration*, 787 A.2d 1179, 1184 (R.I.2002) (quoting *Technology*

*Investors v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I.1997)).

■ In *Nos Limited Partnership v. Booth*, 654 A.2d 308, 310 (R.I.1995), this Court outlined the appropriate procedure for challenging a tax assessment:

"In any tax assessment challenge, the assessor must first present his or her conclusion as to fair market value and the procedure used to arrive at such fair market value of the subject property. If the taxpayer challenges either the legality of the assessment or claims that the assessor used an inappropriate fair market value of the subject property, the burden will be on the taxpayer to present evidence of fair market value."

■ In the instant case, the defendant tax assessor presented evidence in the form of revaluation cards disclosing that pursuant to the 1987 revaluation, lot no. 22 was assessed at $3,780,600 and lot no. 169 was assessed at $4,449,300. These valuations were reduced in 1992 to $2,975,100 and $3,728,600 respectively. The valuations again were reduced in 1994, but there was no evidence to substantiate that the reduction in value of the property had been attributed to an increase in depreciation of twenty-five percent for one year. The plaintiff failed in this proceeding to provide any appraisals or expert testimony about the value of the property other than the fact that the occupancy rate of the buildings had declined. The trial justice concluded that the 1994 reductions, valuing lot no. 22 at $1,032,800 and lot no. 169 at $1,927,000, were erroneous and were "an act of grace by the board, expressly limited to a single year." The trial justice found that the depreciation amount was arbitrary and that there was no justification for reducing the valuation. He properly concluded that the board erred in reducing the valuations of the property

and that the error should not have been perpetuated.

 The plaintiff next contends that because tax appeals were taken in two successive years–1994 and 1995–that the doctrine of *res judicata* precluded retrying the fairness of the 1994 assessments when that issue had been litigated in the previous year and "there was no evidence indicating that there had been a change of value for the years in question." *Pitney v. State Board of Tax Appeals,* 136 N.J.L. 157, 55 A.2d 6, 7 (1947). In the instant case, there had been no previous litigation regarding the assessment, and thus *res judicata* is not applicable. Although tax assessment history may be relevant, "each annual assessment of property for taxation is a separate act and independent of the assessment of the same property for other years." *Delaware, L & W R. Co. v. City of Hoboken,* 16 N.J.Super. 543, 85 A.2d 200, 204 (1951), *rev'd on other grounds,* 10 N.J. 418, 91 A.2d 739 (1952).

 Finally, the plaintiff asserts that the doctrine of administrative finality required that the city tax review board grant the same reduction in 1995 that it granted in 1994 because the requested relief was the same, and there was no material change in circumstances to the property. In *Johnston Ambulatory Surgical Associates, Ltd. v. Nolan,* 755 A.2d 799, 808 (R.I.2000), we held:

"Under this doctrine, when an administrative agency receives an application for relief and denies it, a subsequent application for the same relief may not be granted absent a showing of a change in material circumstances during the time between the two applications. * * * This rule applies as long as the outcome sought in each application is substantially similar, * * * even if the two applications each rely on different legal theories. * * * Administrative ac-

tion is not final, however, if the first decision was invalid."

The doctrine of administrative finality does not apply to the instant proceeding. The doctrine requires that the initial application for tax relief be denied. In this case, the plaintiff's request for tax relief initially had been granted. Also, the doctrine does not permit action that is invalid to be perpetuated. In this case, the trial justice found that the 1994 reduction in valuation was erroneous and concluded that the error should not have been perpetuated.

In addition to challenging the plaintiff's arguments, the defendant tax assessor asserts that the trial justice erred in denying his motion to amend his answer to include the affirmative defense that the plaintiff had failed to file an account in accordance with § 44–5–15. The city assessor contends that filing such an account is a condition precedent to maintaining an action in the Superior Court. However, the defendant failed to appeal from the trial justice's ruling denying his motion, and therefore this issue was not now properly reserved for our consideration and review.

For the reasons above stated, the plaintiff's appeal is denied and dismissed, and the judgment entered in favor of the defendant city tax assessor is affirmed. The papers in this case are remanded to the Superior Court.