DECISION
In four separate actions consolidated for the purposes of trial, the Plaintiff, Weybosset Hill Investments, LLC (WHI), appeals the 1996 (PC 99-2047), 1997 (PC 99-4094), 1998 (PC 00-2065), and 1999 (PC 01-2065) tax assessments[1] on certain real property located in the City of Providence, legally described as Assessor's Plat 24, Lot 626 (Property). WHI seeks a reduction in the assessed value of the Property and a judgment for the return of money, with interest, it claims it overpaid in taxes due to excessive assessments. The Defendant, Thomas Rossi, in his capacity as the Tax Assessor for the City of Providence (Defendant), contends that these assessments were not excessive. Following a nonjury trial, the Defendant also renewed his Motions for Judgment on Partial Findings pursuant to Super. Ct. R. Civ. P. Rule 52. WHI objects to the Defendant's Motions. A ruling on the Motions is herein incorporated with a decision on the merits. Jurisdiction is pursuant to R.I. Gen. Laws § 44-5-26.
 Facts and Travel
Pursuant to state law, the City of Providence (City) conducted a decennial real estate revaluation in 1987. At the time of the decennial revaluation, Blue Cross Blue Shield of Rhode Island (BC/BS) owned the Property. The Property's assessed value was $10,425,400, and the City carried over this assessment each tax year, including the years herein at issue.
Claiming a significant diminution in the value of the Property, BC/BS requested relief from the 1996, 1997, and 1998 assessments, filing the necessary accounts relating to the valuation of the Property with the Defendant. Subsequently, in the face of "substantial repairs," BC/BS decided to sell the Property. (WHI Post-Trial Memo. at 3.) On July 23, 1998, BC/BS entered into a purchase and sale agreement with Paolino Realty, LLC. Joseph R. Paolino, Jr. signed the agreement on behalf of Paolino Realty, LLC. In December 1998, Mr. Paolino formed another entity, WHI, to purchase the Property. For the purchase price of $3,592,000, WHI became the owner of the Property and a parking lot across the street following a closing on March 12, 1999. Two days prior to the closing, the parties executed an assignment agreement (Assignment) transferring to WHI "all claims, rights, remedies, entitlements and obligations" relating to BC/BS's pending appeals of the 1997 and 1998 tax assessments. The Assignment expressly and "specifically" designated the sale of the Property as consideration.
After the sale of the Property, BC/BS continued to occupy 3 1/2 floors in the seven-story building located on the Property. WHI claims that BC/BS rented this space for only six months while BC/BS transferred its employees to other locations. (Id. at 16.) During this post-sale period, WHI spent $2,940,257 to "rehabilitate the building," obtaining two new major commercial tenants following completion of the renovations. (Id.) Between the sale and the trial, 1 1/2 floors in the building remained completely unoccupied. (See id.)
Meanwhile, WHI continued to pursue all of the appeals initiated by BC/BS. This included a challenge to the 1996 assessment, reference to which was omitted in the Assignment. Upon the Defendant's and the Board of Tax Review's denials of appeals from each year's tax assessment, WHI filed suit in the Superior Court. In late April of 2001, following the Defendant's denial of an appeal WHI initiated relating to the 1999 assessment, WHI filed another action in the Superior Court seeking review. On May 8, 2002, BC/BS and WHI executed a "Confirmatory Assignment and Acceptance" in order to clarify the intent of the parties to incorporate the 1996 appeal into the Assignment.
This Court held a nonjury trial in May 2002. At trial, WHI proffered expert testimony from Webster Collins (Collins), a certified real estate appraiser. Collins testified that there are several approaches appraisers generally use to value real estate, including the cost approach, the market sales comparison approach, and the income approach. Further, Collins testified that the income approach — calculated by measuring the potential rents — is usually preferred for valuing income producing property, such as the Property here at issue. However, Collins testified that the best evidence of value for a particular year is an arms' length sale that occurred in that year. According to Collins, the 1998 assessment, which the City carried-over from its 1987 decennial revaluation that apparently utilized the cost approach, was rendered obsolete by the arms' length sale during that tax year. Consequently, the actual value of the Property at the 1998 assessment was only $2,500,000 — the purchase price less the estimated, discounted value of the tax appeals and the cost of the parking lot across the street.
For the other years, Collins used the income approach to estimate the value of the Property. Collins estimated that the value of the Property was $3,495,000 at the 1996 assessment date, $3,895,000 at the 1997 assessment date, and $5,400,000 at the 1999 assessment date. To reach these figures, Collins employed the rental value of similar property and the overall vacancy rate in the City. In particular, Collins used rental rates of $15 per square foot in 1996 and 1997 and between $16 and $16.75 in 1999. According to Collins, the vacancy rates were 5% in 1996 and 1997 and 11.5% in 1999, although the Property had a vacancy rate of 20.9% during the 2000 tax year. Collins also testified that there were too few comparable sales in the relevant area to use that valuation approach. However, Collins did testify that he used the few comparable sales to successfully test his valuation method. All of Collins' conclusions and calculations were documented in a report he prepared, which WHI offered into evidence.
Thomas Bovis, Assistant Vice President of Engineering and Administrative Services for BC/BS, and Joseph R. Paolino, Jr. also testified. Both Bovis and Paolino testified regarding the sophistication of the corporate entities they represented, as well as the intention of BC/BS and WHI to include the appeal of the 1996 assessment in the Assignment. Moreover, by recounting the extensive negotiations leading to the 1999 sale of the Property, both Bovis and Paolino sought to establish that the transfer was, in fact, an arms' length arrangement.
The Defendant offered testimony by way of an affidavit in which he asserted that the sale of the Property was not an arms' length transaction, but an attempt by BC/BS, as a highly regulated health services insurer, to defer realizing an income windfall. According to the Defendant, because BC/BS continued to occupy the premises after the transfer, the transaction was not a sale but a "sale-leaseback" — an attempt by BC/BS to convert an "illiquid" asset into cash it badly needed at the time without surrendering possession of the Property. Further, the Defendant's affidavit claims that Collins' methodology did not comport with the Uniform Standards of Professional Appraisal Practice. Specifically, the Defendant alleges that Collins' valuation speculated as to the rent BC/BS would have paid to itself if it did not own the property. The Defendant also challenges Collins' application of $15 per square foot as the value of comparable rental property in the City. Additionally, the Defendant challenges the inclusion, in Collins' valuation of the Property for the years prior to the transfer, of expenses for certain repairs performed by WHI subsequent to the transfer, as well as parking and utility expenses not supported by the record.
At the close of the trial, the Defendant renewed his Motions for Judgment on Partial Findings, to which WHI objected. In lieu of closing arguments and arguments on the Motion, both WHI and the Defendant submitted multiple post-trial memoranda. In the memoranda on the renewed Motions, the Defendant argues that WHI lacks standing to bring an appeal for the 1996, 1997, and 1998 assessments because WHI did not own the Property when these assessments were performed and because the assignment of tax appeals is prohibited under state law. Further, the Defendant asserts that WHI failed to file an account, under oath, on the value of the Property — a procedural prerequisite to a tax appeal. The Defendant claims that although BC/BS may have submitted an account comporting to the statutory guidelines, due to the provision requiring the account to be filed under oath, BC/BS's account cannot be transferred to WHI. In response, WHI argues that Rhode Island law does not require that a party own the property on the date of the assessment in order to pursue a tax appeal. Moreover, because tax statutes are to be construed liberally to afford taxpayers relief and against the taxing authority, WHI claims that the Assignment of pending appeals on property that it subsequently purchased was effective in conferring standing upon it as an aggrieved party.
Regarding the merits, WHI argues that this Court should exclude the Defendant's affidavit from evidence and credit the valuation testimony of Collins. On the other hand, the Defendant's Memoranda requests that this Court discredit Collins' testimony and rely on the presumption of validity to which the Defendant's assessment is entitled by law. In essence, the three key issues presented by the parties for determination are whether the transaction between BC/BS was a sale or a sale-leaseback, whether the transfer was the result of an arms' length arrangement, and whether WHI, through the testimony of Collins, presented enough evidence on valuation to rebut the presumption in favor of the Defendant.
 Defendant's Motion for Judgment on Partial Findings
Rule 52 provides, in pertinent part:
 "In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law. . . ."
Our Supreme Court has previously stated that in order to comply with these requirements, a trial justice "need not engage in extensive analysis and discussion of all the evidence. Even brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Donnelly v. Cowsill716 A.2d 742, 747 (R.I. 1998) (quoting Anderson v. Town of EastGreenwich, 460 A.2d 420, 423 (R.I. 1983)). Consequently, a trial justice need not make findings with respect to every witness or issue in which "a full understanding of the issues" and the conclusions of the fact finder "may be reached without the aid of separate findings." Id. (internal citations omitted).
Standing
The issue of whether a plaintiff has standing to bring a tax appeal is a mixed question of law and fact. See Cummings v. Shorey, 761 A.2d 680, 684 (R.I. 2000). A plaintiff has standing when "`the plaintiff alleges that the challenged action has caused him [or her] injury in fact, economic or otherwise.'" Id. (quoting Rhode Island OphthalmologicalSociety v. Cannon, 113 R.I. 16, 22, 317 A.2d 124, 128 (1974)). In making this determination, "`[t]he line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury.'" Id. (quoting Matunuck Beach Hotel, Inc. v. Sheldon, 121 R.I. 386, 396,399 A.2d 489, 494 (1979)). Our Supreme Court has also held that a taxpayer has standing if the individual has a "personal stake beyond that shared by all other members of the public at large or the taxpayers of the town." Id. (quoting West Warwick School Committee v. Souliere,626 A.2d 1280, 1284 (R.I. 1993)).
The statutory scheme set forth in Section 44-5-26 allows an individual plaintiff to protest his or her own assessment. Id. R.I. Gen. Laws §44-5-26, titled "Petition in superior court for relief from assessment," provides in pertinent part:
 "Any person aggrieved on any ground whatsoever by any assessment of taxes against him or her in any city or town, or any tenant or group of tenants, of real estate paying rent therefrom, and under obligation to pay more than one-half of the taxes thereon, may within ninety (90) days from the date the first tax payment is due, file an appeal in the local office of tax assessment. . ."[2]
Our Supreme Court has stated that, as a remedial statute, Section 44-5-26
should be construed liberally to achieve effectuation of the relief it is meant to provide. deZahara v. Weiss, 516 A.2d 879, 880 (R.I. 1986) (citing Ayers-Schaffner v. Solomon, 461 A.2d 396, 399 (R.I. 1983)). Further, like all other revenue statutes, any doubt about the meaning or scope of Section 44-5-26 must be resolved in favor of the taxpayer and against the taxing authority. Id. (citing Norberg v. Feist, 495 A.2d 687, 689 (R.I. 1985)).
On at least two occasions, our Supreme Court has had the opportunity to consider the question of who constitutes "any person aggrieved" pursuant to Section 44-5-26. See Cummings, supra, and deZahara, supra. IndeZahara, the Court held that a purchaser of property was an "aggrieved person," and thus, a proper party to institute complaint for relief from tax assessment, even though she was not the record owner of taxed property on the date of assessment. deZahara, 516 A.2d at 880. The Court reasoned that the purchaser was, in reality, the one against whom taxes were imposed and from whom taxes would be collected. See id.; see alsoFleet Credit Corp. v. Frazier, 726 A.2d 452, 455 (R.I. 1999) ("[I]t is important to note that the plaintiff in deZahara owned the property at the time the tax payment was due").
In contrast, the Court in Cummings ruled that a plaintiff in a tax appeal case lacked standing as an aggrieved person when she challenged the municipality's tardy certification of the tax rolls. There, the Court stated that Section 44-5-26 "did not permit one taxpayer to bring, in essence, a class action challenge to the entire taxation structure of a municipality." 761 A.2d at 684. The tardiness in certification arguably produced a generalized grievance, common to all taxpayers in the town, which did not endow the plaintiff with standing to contest the general outcome of the revaluations "absent any claim that the revaluation of herproperty was inaccurate." Id. at 684-685 (Emphasis added). The Cummings
Court distinguished the circumstances of the plaintiff therein from those of the plaintiff in deZahara, the latter of whom had suffered specific, concrete injury from the assessment process when her appeal to reduce the assessment on her property was denied simply because she had purchased the property after the date of revaluation. Id. at 687.
In the present case, WHI purchased the Property on March 12, 1999. Pursuant to the clear instruction of the deZahara opinion, as the party responsible for payment of taxes on the Property for the 1999 tax year,[3] WHI had standing to challenge the 1998 assessment in its own right. Consequently, the Defendant's Motion relating to the 1998 assessment of the Property is denied.
WHI's standing to challenge the 1996 and 1997 assessments emanates from BC/BS's Assignment of pending tax appeals and from WHI's status as a successor-in-interest through its subsequent purchase of the Property. Relying on the Court's opinion in deZahara, WHI argues that a valid[4]
assignment is effective in conferring the necessary standing. Conversely, the Defendant argues that standing under Section 44-5-26 is limited by its definition of an aggrieved person, which requires that the assessment be "against him or her."
However, in Cummings, Frazier, and deZahara, the Court rejected arguments that a taxpayer had to own real property at the time of assessment in order to pursue an appeal. Moreover, the facts of the present case are distinguishable from the Cummings decision in which the Court concluded that the plaintiff lacked standing under Section 44-5-26. There, the plaintiff had a generalized grievance, common to all taxpayers in the town, which did not endow that plaintiff with standing to contest the general outcome of the revaluations. The essential fact in determining the plaintiff's lack of standing in Cummings was the absence of any claim that the revaluation of her property was inaccurate. See
761 A.2d 684-685. Here, as purchaser of the property and the appeals pending at the time of transfer, WHI has made the requisite claim relating to its property. WHI arguably suffered a specific, concrete injury from the assessment process when it purchased, for good and valuable consideration, its predecessor's pending appeal, which had been denied by the Defendant, along with the property. Unlike the plaintiff inCummings, through the assignment of the appeals, WHI has a personal stake in the appeals beyond that shared by all other members of the public at large or the taxpayers of the town. Thus, WHI has sufficiently claimed that the challenged action has caused it an injury in fact and established itself as an aggrieved person under Section 44-5-26.
The Defendant also argues that Section 44-5-26 should be construed like tax exemption statutes, which generally prohibit assignment. RogerWilliams Gen. Hosp. v. Littler, 566 A.2d 948, 950 (R.I. 1989) ("This court has held many times that laws which exempt property from taxation must be strictly construed. . . An exemption from taxation is in the nature of a personal privilege and is neither assignable nor transferable"); see also Fish v. Coggeshall, 22 R.I. 318, 47 A. 692
(1900), and R.I. Gen. Laws § 44-4-4 ("Taxes on real estate are assessed to the owners . . ."). Alternatively, the Defendant argues that absent a statute expressly so authorizing, the assignment of tax appeals violates a general common law prohibition on the transfer of a cause of action.[5]
However, there is nothing to suggest that assignment of assessment appeals is prohibited as in exemption contests. In Frazier, supra, the Court specifically distinguished Section 44-5-26, a remedial statute subject to liberal interpretation and construed against the taxing authority, from the strict construction of exemption statutes. 726 A.2d at 755. There, the plaintiffs, a non-profit lessee and a commercial owner-lessor of computer equipment, were not allowed to contest the tax-exempt status of the equipment used by the lessee, even though the lessee paid the tax. The plaintiffs had relied on deZahara, supra, to establish that the lessee did not have to own the equipment to have the requisite standing to appeal the levy. Noting the differences in the application of the two statutory schemes, the Frazier Court rejected the plaintiffs' argument and held that, unlike in an assessment appeal, a party must own an interest in the property to challenge an exemption. Id. The holding in Frazier establishes that assessment appeals, unlike exemption challenges, are not personal to the owner — subsequent purchasers and lessees responsible for the payment of taxes may also appeal assessments. As a result, the cases cited by the Defendant that prohibited the assignment of exemption challenges based on their "nature of personal privilege" are inapplicable.
Moreover, contrary to the Defendant's argument, R.I. Gen. Laws §9-2-8 impliedly authorizes assignments like the subject one. Section 9-2-8
acknowledges the validity of assignments in some "nonnegotiable chose[s] in action" by allowing assignees to bring actions in their own names, thereby recognizing them as proper parties.
Of course, notwithstanding Section 9-2-8, our Supreme Court has continued to prohibit the assignment of certain underlying causes of action. See e.g., United States Inv. Dev. Corp., supra, and Littler,supra. However, the list of actions that cannot be assigned continues to shrink. See, e.g., Cerberus Partners, L.P. v. Gadsby Hannah,728 A.2d 1057 (R.I. 1999). In a case of first impression, the CerberusPartners Court specifically allowed the assignment of a legal malpractice claim, even though the action sounded in tort and its assignment was prohibited by a majority of jurisdictions. Cerberus Partners involved a suit by a purchaser of a secured commercial loan against a law firm that, while representing the original lender, failed to properly perfect the security interest. There, despite the absence of a duty running from the attorney defendants to the assignee plaintiffs, the Court concluded that the "legal malpractice claims, transferred along with other assetsand obligations to an assignee in a commercial transaction, are assignable." Id. at 1062 (emphasis added). Refusing to "blindly" adhere to a general rule of prohibition in all cases of assignment, the Court acknowledged a distinction between market assignments involving purely economic transactions and freestanding malpractice personal injury claim assignments, only approving assignments in situations involving the former. Id.
The circumstances in the case-at-bar bear resemblance to the circumstances in Cerberus Partners. The assignment in both matters resulted from a commercial transaction. Like in Cerberus Partners, the transfer of the appeals in the present case appears to be a market assignment involving a finite, purely economic transaction. Negating the concern raised in Cerberus Partners, there is little danger of establishing a commercial market in assessment appeals because the assignee purchased property along with the pending appeals, not merely the hypothetical right to bring an appeal. Where the Cerberus Partners
defendant's liability was bounded by contract, the City's liability is bounded by the submission, under oath, of an account when the case is filed. Moreover, as the instant action does not sound in tort, it presents an even more compelling reason to allow the assignment than did the transaction at issue in Cerberus Partners.
Accordingly, this Court finds that the Assignment was not prohibited under state law and effectively conferred standing upon WHI to pursue the appeals of the 1996 and 1997 assessments. Defendant's Rule 52 Motion based on standing is therefore denied.
Accounting
Sections 44-5-15 and 44-5-16 require taxpayers challenging an assessment to file an account, under oath, describing and specifying the value of the property. See Wickes Asset Mgmt. v. Dupuis, 679 A.2d 314
(R.I. 1996). "[W]hoever neglects or refuses to bring in the account, if overtaxed, shall have no remedy therefore, except as provided in §§44-4-14, 44-4-15, 44-5-26 to 44-5-31, inclusive, and 44-9-19 to 44-9-24, inclusive." Section 44-5-16.
Our Supreme Court has determined that the filing of an account is a condition precedent to allowing the taxpayer to seek relief by means of a petition for assessment of damages. Wickes, 679 A.2d at 318 (citing RockRidge Limited v. Assessor of Taxes of Woonsocket, 667 A.2d 778 (R.I. 1995)). Like any condition precedent, it must be pleaded and presented to the trial justice prior to trial and in accordance with Rule 9(c) of the Superior Court Rules of Civil Procedure. Id. (citing Chase v. Bouchard,671 A.2d 794, 796 (R.I. 1996)). In Chase, the Court further indicated that a city's failure to plead the defense of failure to file an account or to raise the issue before the trial justice constituted a waiver of this ground for dismissal of an action. Chase, 671 A.2d at 796-97; seealso McKee v. Bouchard, 674 A.2d 378 (R.I. 1996).
The Defendant argues that since agents of BC/BS provided the accounts, under oath, when it instituted the 1996, 1997, and 1998 appeals, said accounts are "not transferable." (Defendant's Memo. in Support of Motion for Judgment on Partial Findings at 5.) Factually, in his Memorandum, Defendant asserts that he "affirmatively pled the defense of [WHI's] failure to comply with the statutory requirements in its [sic] answer to C.A. No. 00-3481," the challenge of the 1998 assessment. (Id. at 5.) In that action, Defendant's list of affirmative defenses states: "1. This Court does not have jurisdiction over this action. 2. Plaintiff failed to comply with the statutory prerequisite to suit. 3. Plaintiff failed to submit timely, adequate account in conformity with the statute."
However, Defendant's factual assertion is not supported by the record. On September 17, 2001, impliedly realizing his failure to sufficiently invoke the statutory affirmative defense, the Defendant moved to amend his answers to include specific references to Sections 44-5-15 and 44-5-16in all four pending actions. At an October 10, 2001 hearing, the Court, Ragosta, J., denied the Defendant's motions in each case.
The Order denying the Defendant's motions entered on November 2. Consequently, as this litigation presently stands, the record in the instant matter is devoid of any evidence indicating that Defendant asserted this defense prior to trial with the specificity and particularity required by Rule 9(c). See Willow St. Assocs. LLP v. Bd. ofTax Assessment Review, 798 A.2d 896 (R.I. 2002), and Landfill ResourceRecovery v. Gelinas, 703 A.2d 602 (R.I. 1997). Thus, the Defendant's statutory argument must be considered waived.[6] See deBourgknecht v.Rossi, 798 A.2d 934 (R.I. 2002).
This Court now finds that the Defendant's Answer in each of WHI's tax appeals neglected to raise the failure of a statutory condition precedent with the specificity and particularity required by Super. R. Civ. P. Rule 9(c). The Defendant implicitly so acknowledged when he moved to amend his Answers in each of the cases, which motions were denied. Therefore, Defendant's argument must be considered waived in each case, and his renewed Rule 52 Motion based on WHI's alleged failure to comply with the statutory requirement is denied.
 Nonjury Trial-Standard of Review
In a nonjury trial, "the trial justice sits as a trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, she weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences." Id. "The task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . ." Id.; see also Rodriques v.Santos, 466 A.2d 306, 312 (R.I. 1983) (the question of who is to be believed is one for the trier of fact).
 The Evidence before the Court 
Determining the fair market value of property is a discretionary act delegated by the General Assembly to the individual municipal assessors.Willow St. Assocs. LLP v. Bd. of Tax Assessment Review, 798 A.2d 896
(R.I. 2002) (citing Cummings, 761 A.2d at 686-87 (R.I. 2000)). "Tax assessors are entitled to a presumption that they have performed their official acts properly until the contrary is proven." Id. (quotingFerland Corp. v. Bouchard, 626 A.2d 210, 215 (R.I. 1993) and Kargman v. Jacobs, 122 R.I. 720, 731, 411 A.2d 1326, 1332 (1980) (Kargman II)). Our Supreme Court has upheld a municipal tax assessment when the assessor has used one of the recognized methods of valuation in establishing the fair market value of the property. Id. (citing Kargman v. Jacobs, 113 R.I. 696, 704, 325 A.2d 543, 547-548 (1974) (Kargman I)). Thereafter, a tax assessor may carry over the same fair-market-value finding from one tax-assessment date to the next until it is required to conduct its decennial revaluation. Wickes Asset Mgmt. v. Dupuis, 679 A.2d 314, 321 (R.I. 1996).
Recently, Our Supreme Court again outlined the appropriate procedure for challenging a tax assessment:
 "In any tax assessment challenge, the assessor must first present his or her conclusion as to fair market value and the procedure used to arrive at such fair market value of the subject property. If the taxpayer challenges either the legality of the assessment or claims that the assessor used an inappropriate fair market value of the subject property, the burden will be on the taxpayer to present evidence of fair market value." deBourgknecht v. Rossi, 798 A.2d 934 (R.I. 2002) (quoting Nos Limited Partnership v. Booth, 654 A.2d 308, 310 (R.I. 1995)); see also Willow St. Assocs. LLP v. Bd. of Tax Assessment Review, 798 A.2d 896
(R.I. 2002) ("The burden of proof is on the taxpayer to establish . . . that defendant assessor has set a value on the subject property that is greater than its full and fair cash value").
In the instant case, the Defendant's records established that in the 1987 decennial revaluation, the Defendant utilized "a replacement-cost (new) minus depreciation approach." (Defendant's Post-Trial Memo. at 5.) WHI has challenged neither the legality of the assessment nor the methodology of the Defendant in conducting his decennial review. As permitted by state law, the Defendant carried over the same valuation for each subsequent year's assessment.
To satisfy its burden of proof on fair market value, WHI relies on the evidence presented by Collins on the issue of fair market value. His testimony was both credible, convincing, and virtually uncontradicted. Notwithstanding a lengthy cross-examination, Collins' testimony was most compelling. This Court now formally accepts same as expert testimony.
In both his memoranda and in his affidavit,[7] the Defendant first argues that Collins' conclusions are flawed because the sale of the Property was not "an arm's length transaction,"[8] as Collins has assumed. Instead, the Defendant asserts that, as a highly regulated "non-profit hospital services' corporation," BC/BS was not motivated to maximize its profits on the sale of the Property, but to defer a would-be $10 million windfall to avoid "regulatory repercussions." However, the Defendant's position is not based upon any evidence in the record, and thus, is pure speculation. Through the testimony of Paolino and Bovis, WHI presented the only evidence on this issue at trial. These two witnesses testified to the sophistication of the parties, the substantial negotiations between the parties, and the absence of any indication of collusion or bad faith among the parties. Both gentlemen were compelling witnesses, credible and uncontradicted. Therefore, this Court concludes that the sale between BC/BS was an arm's length transaction.
The Defendant next argues that due to BC/BS's continued occupation of the Property following the 1999 transfer, the transaction was a sale-leaseback that could not be used to establish the fair market value for that year. Again, contrary to his assertions, the Defendant's argument is not supported by the record evidence. The Defendant's argument rests on an article in a magazine published by Collins' firm that describes, generally, the attributes of a sale-leaseback. The article, attached as an appendix to the Defendant's affidavit, states:
 "A sale-leaseback deal is analogous to a 100% loan-to-value, long-term, fixed rate loan. . . . Drawbacks for the seller in a sale-leaseback deal include a long-term commitment to the property . . . . In the sale lease-back transaction, the buyer's focus is on the lessee's credit, not the real property characteristics. . . ."
However, nothing in the record indicates any sort of loan arrangement. Moreover, there is nothing before this Court to indicate a long-term relationship between BC/BS and WHI. While the total duration of BC/BS's lease has not been argued, the testimony of Bovis and Paolino is undisputed on the fact that BC/BS's occupancy of the building following the transfer lasted for six months. The Defendant has not presented any legal authority to show that a six-month holdover occupation following a title transfer constitutes a leaseback arrangement, per se. Likewise, the Defendant offered no evidence to demonstrate a correlation between a $7 million diminution in the sales price — the Defendant's assessment minus the actual price paid by WHI — and the value of six months rent so as to effectively challenge the substance of the transfer. Accordingly, this Court now finds that the 1999 transfer of the Property from BC/BS to WHI was, in fact, a sale.
Finally, the Defendant argues that this Court should reject Collins' valuation. The Defendant claims that Collins' methodology was flawed and that he relied solely on WHI's purchase price to establish the fair market value in 1999, which is an appraisal approach that is allowed in only a minority of jurisdictions.
Our Supreme Court has stated that a trial justice has the authority to accept the opinion of one valuation expert and reject the opinion of another valuation expert. See Willow St., 798 A.2d 896. Here, in his testimony and his report, Collins presented substantial and credible evidence of fair market value via the income approach for 1996, 1997, and 1998 valuations, and the purchase price approach for the 1999 valuation. To the satisfaction of this Court, he accounted for each of the Defendant's challenges to his calculation of valuation. Collins explained how he derived the $15 per square foot rental rate from a comparison of eight similarly located comparable rental properties. (See generally WHI Post-Trial Memo. at 16-18, Plaintiff's Ex. #19 at 43-45.) Further, Collins justified the basis of the occupancy rates he used through a published study. (Id.) Collins also justified his inclusion of the rent BC/BS would have charged itself if it were not an owner-occupied building, the function certain expenses had on the valuation and the reason for consideration. (Id.) Additionally, Collins clarified WHI's responsibility, as owner, for operating expenses such as utility payments the Defendant claimed were not supported by the record. (Id.)
Conversely, in his affidavit, the Defendant presented no additional evidence to support his 1996, 1997, 1998, and 1999 assessments and, once challenged, neglected to offer an explanation as to the precise methodology and figures used to reach the assessment figures for these years.[9] To believe the Defendant's argument, one must accept the proposition that a seller of property would accept $6 million less than it was worth. The Defendant did not successfully convince this Court to adopt that proposition. Factually, this Court accepts both the testimony of WHI's expert witness on the value of the Property and his conclusions.
Notwithstanding all of the foregoing, the Defendant urges this Court to rely on the presumption of validity to which the Defendant is entitled, carried-over from the decennial revaluation. However, in enacting Section44-5-26, the Legislature provided interim remedies for a person aggrieved by an annual tax assessment. Wickes, 679 A.2d at 320 (emphasis added);see also deBourgknecht, 798 A.2d 934 ("Although tax assessment history may be relevant, each annual assessment of property for taxation is a separate act and independent of the assessment of the same property for other years"). Thus, a property owner disputing an assessment carried-over from a prior year is not precluded from challenging the assessment, and further, is not necessarily "locked into" that value until the next decennial revaluation. Id.
In the present case, the Defendant offered no evidence to support his conclusions regarding the value of the Property for the years herein atissue. The Defendant merely carried over the exact same assessment each year following the decennial revaluation. When challenged, the Defendant could not substantiate his own yearly assessments. Therefore, this Court finds that WHI presented sufficient evidence to rebut the presumption of validity attendant to the assessor's carry-over of a decennial review, which WHI had a right to challenge.
 Conclusion
The Defendant's Rule 52 motions based on WHI's lack of standing and failure to file an account are denied. WHI possessed standing to challenge the 1998 assessment in its own right. The Assignment was valid and effective in conferring standing for the appeal of the 1996 and 1997 assessments. Moreover, the Assignment was not prohibited by state law. Contrary to the Defendant's assertions, the record indicates that the Defendant failed to sufficiently plead the statutory, affirmative defense relating to WHI's failure to file an account. Therefore, this Court treated the issue as waived.
The record evidence before this Court indicates that BC/BS's 1999 transfer of the Property to WHI constituted an arms' length sale of the Property. WHI's appeals are sustained based on the levels provided by Collins, WHI's expert witness, which this Court formally adopts as follows: $3,495,000 for the 1996 assessment, $3,895,000 for the 1997 assessment, $2,500,000 for the 1998 assessment, and $5,400,000 for the 1999 assessment. The City shall alter the assessments accordingly and return to WHI all of the excess amounts paid for those years relating to the Property, whether paid by BC/BS or by WHI.
Counsel shall submit orders for entry in each case.
[1] For clarity and uniformity, this Court references the assessment year rather than the tax year unless specifically noted.
[2] The statute then sets forth the necessary procedure and the applicable time limitations involved in perfecting an appeal in the Superior Court. See id. Unless a party invokes the equity jurisdiction of the Superior Court, the remedy provided in Section 44-5-26 is exclusive. R.I. Gen Laws § 44-5-27. In the present case, WHI has not invoked this Court's equity jurisdiction, and thus, is limited to the relief provided in Section 44-5-26.
[3] A tax foreclosure subsequent to the purchase would have affected WHI's interest in the property. Therefore, WHI was not required to offer evidence that it actually paid the taxes in the year of purchase.
[4] The Defendant has not challenged the validity of the Assignment. Moreover, the Defendant does not dispute that WHI and BC/BS intended to include the 1996 assessment in the Assignment, but mistakenly omitted it. Therefore, this Court now finds, as a matter of fact, that the Assignment of BC/BS's interest in the 1996 and 1997 assessment appeals to WHI was valid.
[5] In a related argument, the Defendant also suggests that concepts of champerty and maintenance should operate to prevent the Assignment. SeeUnited States Inv. Dev. Corp. v. Rhode Island Dep't of Human Servs.,606 A.2d 1314 (R.I. 1992). However, in United States Inv. Dev. Corp.,
the Court stated that historically, "the common law prevented assignment of a person's cause of action to recover for personal injuries. . . This rule has since been modified to distinguish conventional subrogation from assignment of tort claims because assignment involves dangers of champerty and maintenance and subrogation does not." Id. at 1317 (internal citations omitted). Consequently, as the present action is neither a personal injury action nor based in tort, the cases cited by the Defendant relating to champerty and maintenance are inapposite.
[6] Moreover, even if the Defendant's Answers could be read to include a statutory affirmative defense, failure to file an account does not deprive the Superior Court of subject-matter jurisdiction. Wickes, 679 A.2d at 318. In Rock Ridge, the Court held that a taxpayer's failure to file an account did not and could not deprive the Superior Court of subject-matter jurisdiction to consider the statutory exceptions to the requirement of filing an account, nor would such failure preclude the Superior Court from considering the case on the merits. See id. (citingRock Ridge, 667 A.2d at 780).
[7] "`The admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion.'" Id. (quoting Graff v. Motta, 748 A.2d 249, 252 (R.I. 2000)). Here, WHI objected to the introduction of the Defendant's affidavit, arguing that there is no rule of evidence that renders it admissible. The Defendant claims that an illness, in essence, made him an "unavailable witness." In fact, well before the trial, the Defendant did inform WHI that he would not testify. This Court offered WHI an opportunity to cross-examine the Defendant by affidavit or by some other means. WHI declined the opportunity. As this is neither a criminal case nor a jury trial, the general purposes of the rules of evidence and the interests of justice would best be served by admission of the affidavit into evidence. Therefore, this Court now finds that the Defendant's illness rendered him "unavailable" for the purposes of testifying, and his sworn affidavit is admissible under R.I. R. Evid. Rule 804(b)(5).
[8] An arm's length transaction is "a transaction negotiated by unrelated parties, each acting in his or her own self interest." Black'sLaw Dictionary 109 (6th ed. 1990); see also Rhode Island DepositorsEconomic Protection Corp. v. Brown, 661 A.2d 969, 970 (R.I. 1995) (holding that the trial justice did not abuse his discretion by concluding that a proposed settlement was based upon intense arm's length negotiations; the trial justice also determined that there was no indication of either collusion or bad faith, the settlement was fair and reasonable, made in good faith, and was in the best interests of the moving parties).
[9] Additionally, as this Court understands the cost approach utilized by the Defendant, after factoring-in depreciation, the value of the Property and the concomitant assessments should have decreased for each tax year following the decennial revaluation. In fact, the record indicates that the assessments were exactly the same each year.