**217 A.2d 476.**

TRUSTEES OF GRACE AND HOPE MISSION OF BALTIMORE CITY, INCORPORATED *vs.* PROVIDENCE REDEVELOPMENT AGENCY.

MARCH 16, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

POWERS, J. This is a petition for the assessment of damages brought pursuant to the provisions of G. L. 1956, §45-32-34 as a result of the taking by eminent domain of the petitioner's real property by the respondent agency, hereinafter called the agency. It was tried by a superior court justice sitting with a jury and resulted in a verdict for the petitioner in the sum of $110,000 plus interest. The case is before us on the agency's bill of exceptions to certain evidentiary rulings.

The record discloses that petitioner corporation conducted a religious and benevolent mission in Providence for some thirty years, during the course of which it purchased the subject property at 577 Westminster street about July 1950. It consisted of a three-story brick building on a lot containing 3,580 square feet and in 1951 the existing premises were renovated and a new addition added so as to conform to the needs of the mission in accordance with plans drawn by an architect for that purpose.

It further appears that the property as renovated consisted of an office, library, laundry, kitchenette, classrooms, serving room, chapel and two lavatories on the first floor. The second floor contained an office, bedrooms, living room, dining room, kitchen and bathroom, while on the third floor there were a large bedroom and two small spare rooms.

The parties agree that the property was properly taken on May 15, 1964 and the only question at issue was the amount of money to which petitioner was entitled as just compensation for the taking.

Robert W. Lister, Jr., experienced in buying, selling and appraising real property, testified on behalf of petitioner that he had inspected the premises and found them to be in excellent condition by reason of exceptional maintenance. Further testifying that because of the unusual character of the property, he reached what, in his expert opinion, was a fair market value on the day of condemnation by resorting to the cost of reproduction minus physical depreciation of the structure and adding this figure to the land value, exclusive of improvements, which latter figure was based on comparable sales.

In this connection it is to be noted that the same approach was used by Peter A. Laudati, Jr., the agency's expert. However, it is also significant and worthy of note that whereas the expert witness, Lister, treated the structure as a single building comprehensively devoted to the purposes for which it had been renovated, the expert witness for the agency testified that "The structure essentially was two buildings."

Mr. Lister testified that the land value, without the existing improvements, was $14,320 on the basis of $4 per square foot. To determine the value of the land as enhanced by the structure thereon, he stated that Arthur E. Clark, Jr., of the firm of J. Adolf Johnson, Inc., in Warwick, was engaged to do a reproduction appraisal.

Mr. Clark, testifying at length as to his qualifications and experience, stated that he had been given a set of the plans used by the architect and engineer in renovating the property in 1951. From these and a personal inspection he estimated the reproduction cost at $128,576.

The real estate appraiser, Lister, depreciated this figure by 10 per cent on the basis of his opinion of the property's condition and reached a depreciated reproduction value of $115,718 which, added to the unimproved land value of $14,320, made for a total value of $130,038 for the property

on the day of condemnation. He rounded out this figure to $130,000. The 10 per cent depreciation factor reached by Lister as a real estate expert was corroborated as being fair by Mr. Clark, the construction expert.

Mr. Laudati, also using comparable sales data, appraised the land exclusive of improvements at $3.50 a square foot, which he rounded out to $12,500. In determining the value of the land as enhanced by improvements, he had recourse to the reproduction estimates supplied by John Marshall of Marshall Contractors, Inc., engaged by the agency for that purpose. Mr. Marshall, experienced in heavy construction, however, consistent with the agency's theory that there were basically two structures, compiled separate reproduction costs for what he referred to as "the old and the new sections of the building * * *." These were $57,614 and $57,241 respectively. Mr. Laudati then depreciated the older section by $28,127 and the new addition by $16,281. This resulted in a net overall value of reproduction less physical depreciation of $70,447 which he rounded to $70,500. Added to the unimproved land value of $12,500, the market value of the property taken on the day of condemnation was $83,000 in the opinion of the agency's expert. Mr. Laudati and Mr. Marshall were in agreement that the depreciation factor for the so-called original section was 48 plus per cent and 27 plus per cent for the new.

The jury returned a verdict for petitioner in the sum of $110,000 to which the trial justice, with the agreement of the parties, added interest in the amount of $2,100. The agency made no motion for a new trial but did prosecute a bill of exceptions to certain evidentiary rulings.

The agency, in its oral argument and brief, purports to argue three propositions which are apparently predicated on ten exceptions to evidentiary rulings taken during the course of the trial. The exceptions relied upon, however, are not specifically identified with the argument or argu-

ments to which they purportedly relate as required by rule No. 15 of the Rules of the Supreme Court. However, petitioner in its brief attempted a precise association of each argument with the specific exception or exceptions relied upon, and in oral argument counsel for the agency agreed that the relationship set forth by petitioner was substantially exact. For this and for the further reason that public funds are involved, we are constrained to consider the agency's several contentions despite the defective prosecution of its bill of exceptions.

The first proposition contended for by the agency is that the trial justice erred in sustaining petitioner's objection to the following question asked in cross-examination of the witness Lister: "Mr. Lister, is it your opinion that this property could have been sold on May 15 of 1964 for $130,-000?"

In direct examination petitioner's witness, Lister, using the comparable sales data as to the value of the land, exclusive of improvements, plus the cost of reproduction less physical depreciation for the value of the land as improved by the structure, had testified that the value of the property on the day of condemnation was $130,000. Thus the agency argues in effect that the question to which objection was made and sustained was designed to ascertain whether Lister considered the fair market value of the property on the day of condemnation to be that value to which he had testified in direct examination.

The thrust of the agency's contention is that it has long been settled that the measure of damages for just compensation guaranteed to a condemnee by the constitution is fair market value, citing *Hall* v. *City of Providence,* 45 R. I. 167, *Hervey* v. *City of Providence,* 47 R. I. 378, and *Assembly of God Church* v. *Vallone,* 89 R. I. 1. If, as the agency appears to contend, the witness Lister could not have given his opinion as to the fair market value, his appraisal of $130,000 was without probative force.

Although in *Hall* v. *City of Providence, supra,* where the cost of improvements was held to have been properly admitted to aid the jury in arriving at the measure of damages, this court referred to such measure as "fair value." The approach used was not that of reproduction minus physical depreciation. Clearly all of the parties and the court recognized that there was a market for the Hall farm, even though unique among its kind. Here, both petitioner and the agency proceeded on the proposition that because of the unique purposes to which the property was dedicated, there was no market and the measure of damages could only be determined by estimates of depreciated reproduction costs as was the case in *Assembly of God Church* v. *Vallone, supra.*

In such circumstances there could be no probative answer to the question here excluded and if one were permitted to be given it could only serve to confuse the jury or complicate the issue. Exclusion of the question therefore was proper. *Hervey* v. *City of Providence, supra.*

The second proposition for which the agency contends is that the trial justice erred in not allowing its expert witness to give evidence of "functional depreciation" in arriving at his opinion as to fair market value. It argues that, since the approach used to determine the measure of damages, or just compensation, to which petitioner was entitled was that of reproduction cost minus depreciation, functional as well as physical depreciation must be taken into consideration in determining the fair market value, citing *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, *State* v. *Red Wing Laundry & Dry Cleaning Co.,* 253 Minn. 570, 5 Nichols, Eminent Domain (3d ed. rev.), §20.3, and 2 Orgel, Valuation under Eminent Domain (2d ed.), §197, p. 49.

At the outset it is to be observed that from a reading of the eminent text writers cited by the agency and the cases to which they refer, our sister states are in disagreement as

to the competency of the depreciated reproduction cost approach as to the measure of damages to which a condemnee may be justly entitled. Throughout the authorities which we have examined there are references to the majority, minority and hybrid rules with varying exceptions applicable to each. What is clear, however, is that the rationale adopted case by case is to permit such aids to be shown as will most fairly achieve an award of damages compatible with just compensation. We conclude that, at least where as here the condemning authority and the property owner are in agreement that, by reason of the unique or peculiar character of the property taken, no market for it exists, the depreciated reproduction cost approach is proper. See *Assembly of God Church* v. *Vallone, supra.*

The immediate question for our consideration, however, as posed by the agency is to the nature of the evidence that is probative of depreciation.

The agency vigorously contends that, in addition to structural or physical depreciation, allowance should be made for functional depreciation referred to at times as obsolescence. A reading of the text writers heretofore cited and of the cases referred to by them, however, indicates that functional depreciation also includes loss of adaptability to the use for which a building was originally constructed and economic factors such as change in the neighborhood either with the passing of time or zoning.

In the instant case the agency argues that in addition to the physical depreciation of the mission property, there was a further depreciation of 10 per cent or $5,761 to, as it says, the "old portion or the original building which fronts on Westminster Street * * *." That it was not permitted to introduce this evidence, it argues, constitutes prejudicial error.

Assuming arguendo that evidence of functional as well as physical depreciation should be permitted where the repro-

duction cost approach is used, a condition precedent to its admission should be a showing, for example, that because the property or some portion thereof is becoming antiquated or out of date, it is not functioning efficiently in the use for which it was constructed or renovated and to which it was dedicated at the time of the taking. Opinion evidence as to functional depreciation without first laying the proper foundation becomes speculative and should not be admitted.

In its application of the depreciated reproduction data, it attempted to divide the property being used for religious and benevolent purposes as a mission into two structures, one old, one new. This completely overlooked the fact that in 1951 a new structure was created, designed, and successfully so, to serve the unique needs of petitioner. There is nothing in the agency's offer of proof to show that any depreciation, other than wear and tear, could be justly considered in arriving at an amount of money which would justly compensate petitioner for its loss.

We hold therefore that the trial justice did not err in excluding evidence of functional depreciation on a theory of obsolescence.

The agency's third contention need not be discussed for the reason that it is premised on the proposition that the trial justice erred in holding that evidence of functional depreciation should not be admitted.

For the reasons heretofore given, all of the respondent agency's exceptions briefed and argued are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Higgins, Cavanagh & Cooney, John P. Cooney, Jr.,* for petitioner.

*Timothy J. McCarthy, Paul F. Casey, Raymond Mannarelli,* for respondent.