256 A.2d 5.

TRAVELLERS BUILDING ASS'N, INC. *vs.* PROVIDENCE REDEVELOPMENT AGENCY.

JULY 24, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

84

KELLEHER, J. In this appeal, the defendant Redevelopment Agency challenges the superior court's award to the plaintiff of $314,353.60. This sum represents a jury verdict of $270,500 together with interest of $43,853.60. This money is compensation allegedly due the plaintiff for property taken through condemnation by the agency as part of its Weybosset Hill Redevelopment Project.

The subject property was located in Providence at the southeast corner of Franklin and Garden Streets. It served as a clubhouse and meeting place for the Providence chapter of the United Commercial Travellers of America. The United Commercial Travellers is a nationwide fraternal organization well known for its many civic, charitable and philanthropic activities. The plaintiff is the organization's

real estate holding corporation. Its officers and stockholders are all members of the Providence chapter. The corporation acquired this property in 1943.

The clubhouse was located on a parcel of land which measured 9,294 square feet in area. It consisted of two buildings which were joined together. One building was a three-story wooden frame structure. The other building was made of brick. The wooden building fronted on Franklin Street. It was built during the period between 1870 to 1875, and at one time was used as a residence. In this structure were found the club's committee rooms, meeting rooms and various game rooms. Shortly after the turn of the century, near 1905, the brick addition was built. This brick structure consisted for the most part of a large ornate hall. The Travellers used the hall for a variety of purposes. It served as a ballroom, a banquet hall and an auditorium where people gathered to play bingo. This brick addition and the wooden building were just about equal in height. There is nothing in the record to show for what purpose both buildings were used prior to their acquisition by plaintiff.

It was agreed by the parties that, because of the unusual nature of plaintiff's property, the only recognized method to determine its fair market value on the day of condemnation would be the reproduction-cost-less-depreciation method of appraisal as far as the structure was concerned, and the adding to this figure the value of the land. The land value was to be determined from an analysis of comparable sales.

The plaintiff presented two witnesses—one a qualified expert in construction work and the other an expert well versed in appraisal of real estate. The defendant also engaged the services of two experts who each specialized in the same fields as plaintiff's respective witnesses. Based on the construction expert's testimony, plaintiff claimed

that the depreciated reproduction cost of its clubhouse was $301,167. Its real estate expert valued the land at $4 a square foot and informed the jury that plaintiff's land was worth $37,176. He also made certain adjustments to the depreciated-reproduction-cost figure given by the construction expert. He then added the land value and the adjusted-depreciated-reproduction cost to the building. The total figure amounted to $336,636. The realtor rounded out this sum to $335,000. This last amount, plaintiff claims, was the fair market value of its Franklin Street premises on the date of condemnation.

The agency's experts, however, produced competent evidence which resulted in a much lower value. The defendant maintained that the depreciated reproduction cost of the clubhouse was $144,800. The land was valued at $2 a square foot giving a total land value of $18,600. The two figures were added together and defendant agency contends that the market value of plaintiff's property was $163,400.

None of the depreciated reproduction costs submitted to the jury contained any allowance for functional obsolescence. The plaintiff's witnesses conceded that they did not make any allowance for this factor. The defendant in presenting its case attempted to introduce evidence on this particular element of depreciation. A preliminary hearing on this issue was held in the absence of the jury. At its conclusion, the trial justice refused to allow defendant's real estate expert to give an opinion to the jury as to the extent of functional obsolescence present in plaintiff's structure. It is this refusal which forms the major portion of defendant's appeal. In our opinion, the trial justice's refusal to allow this evidence to be presented to the jury was erroneous.

While we have on two different occasions referred to

functional obsolescence,[1] we think it proper that we now define this term and discuss its application. We first specifically mentioned functional obsolescence in *Trustees of Grace and Hope Mission, Inc.* v. *Providence Redevelopment Agency,* 100 R. I. 537, 217 A.2d 476, there we said:

"Assuming arguendo that evidence of functional as well as physical depreciation should be permitted where the reproduction cost approach is used, a condition precedent to its admission should be a showing, for example, that because the property or some portion thereof is becoming antiquated or out of date, it is not functioning efficiently in the use for which it was constructed or renovated and to which it was dedicated at the time of the taking. Opinion evidence as to functional depreciation without first laying the proper foundation becomes speculative and should not be admitted."

Later, in *Atlantic Refining Co.* v. *Director of Public Works,* 102 R. I. 696, 233 A.2d 423, in speaking of functional depreciation, we alluded to the *Trustees of Grace and Hope Mission* case.

During the trial of the instant case, when the issue of the admissibility of evidence of functional obsolescence arose, there followed a long and extended colloquy between the court and counsel. As he considered this issue, the trial justice took varying views as to whether he would let the real estate expert tell the jury of his opinion on the functional obsolescence present in plaintiff's clubhouse. At one point, the court said that "* * * basically functional depreciation is a matter of a great deal of talk and is very seldom applied." He then went on to state that there was no case in this jurisdiction which expressly holds that this type of evidence may be presented to a jury for its evaluation.

---

[1] Functional obsolescence is also called functional depreciation. We have in this opinion, for ease of understanding, referred to it as functional obsolescence.

Later, however, he conceded that there was much to be said for the point of view expressed by the agency's expert. At this point, the court took its noon recess. When the trial resumed in the afternoon, the trial justice emphasized that, in the *Trustees of Grace and Hope Mission* case, we had assumed for the purpose of argument that functional obsolescence had a part to play when considering the reproduction cost method of valuation. This assumption, he said, convinced him that there is a very limited application of this element of valuation. He then declared that there was no functional obsolescence in the record upon which any monetary value could be placed and he therefore refused to permit the agency's realtor to testify any further on this element. The agency then made an offer of proof that if its expert were allowed to testify, he would deduct from the then depreciated reproduction cost of plaintiff's clubhouse an additional 20 percent. This figure represented the expert's view as to the amount of functional obsolescence present in plaintiff's property.

While the trial justice was quite correct in his observation that we employed the phrase "arguendo" as we discussed the element of functional obsolescence in the *Trustees of Grace and Hope Mission* case, he misconceived our view of the validity and the extent of the application of the doctrine of functional obsolescence.

In eminent domain cases, the general measure of damages is the fair market value of the property at the time of the taking. *L'Etoile* v. *Director of Public Works*, 89 R. I. 394, 153 A.2d 173. We have held that the best criteria as to what constitutes fair market value are prices paid at or about the time of the taking by voluntary sales in the open market by willing buyers to willing sellers for parcels substantially similar and comparable to that taken. *Manning* v. *Redevelopment Agency of Newport*, 103 R. I. 371, 238 A.2d 378.

In *Assembly of God Church* v. *Vallone,* 89 R. I. 1, 150 A.2d 11, we recognize that there is generally no active market for the special purpose property that developed for the particular needs of a nonprofit, charitable or religious organization and consequently the market value of such property cannot be shown by so-called comparable sales approach. We held that in such a case the cost of the land plus the reproduction cost of the improvement less depreciation thereof could be properly considered by a jury as a factor in determining the market value of property.

The reproduction cost of a building is calculated by determining the current prices of all materials, labor and overhead which would be needed to duplicate the structure as it was when new. 5 Nichols, *Eminent Domain,* §20.2[3] (3d ed. 1962). There is, however, a recognized risk that evidence of reproduction costs may lead to "* * * an excessive award unless it is *adequately* discounted for obsolescence and inadequacy as well as for physical depreciation." (emphasis ours) 2 Orgel, *Valuation Under Eminent Domain,* §199 (2d ed. 1953) at 57. See *Commonwealth* v. *Massachusetts Turnpike Authority,* 352 Mass. 143, 224 N.E.2d 186. One court has described the reproduction-cost technique of evaluation as the "least reliable indicia [sic] of market value." *United States* v. *Certain Interests in Property in Champaign County,* 271 F.2d 379. In our opinion, therefore, when an estimate is given as to the market value of a building by employing the reproduction cost approach the appraiser must estimate the amount of depreciation that has accrued up to the time of the taking and deduct such assessment from the estimated cost of the new building. While in the past[2] there must have been some

---

[2]*In Re United States Comm.,* 295 F. 950, *cert. denied,* 265 U. S. 598, 44 S. Ct. 634, 68 L.Ed. 1199.

judicial reluctance to recognize the element of functional obsolescence, we believe that today,[3] the overwhelming weight of authority recognizes the necessity of making a proper allowance for a structure's functional obsolescence. Accordingly, when determining accrued depreciation, consideration must be given to three elements: the physical deterioration of the structure, functional obsolescence and economic obsolescence.[4]

While we have never attempted to make an all-inclusive definition of functional obsolescence, we believe that it includes a loss of value which is inherent in a building because of its inability to perform adequately its intended function. It is usually represented by antiquated design, appearance, overdesign and other structural features outdated when compared with modern design and construction. U. S. Army Corps of Engineers (October 1955 ed.), *Real Property Appraiser's Handbook,* at 24. Functional obsolescence may also be described as a loss in value resulting from inadequacies in a structure either in its inception or as the result of technological improvements which develop in the course of time. 5 Nichols, *Eminent Domain,* §20.3 (3d ed. 1962) at 390-391.

When we previously stated that the trial court should hold a preliminary hearing before permitting an appraiser to give a jury his opinion as to the presence of functional obsolescence in a structure, it was never our intention that

---

[3] *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 151 A.2d 693; *State* v. *Red Wing Laundry and Dry Cleaning Co.,* 253 Minn. 570, 93 N.W.2d 206; *State* v. *Cone* (Mo.) 338 S.W.2d 22; *State H'way Comm.* v. *Tubbs,* 147 Mont. 296, 411 P.2d 739; *Application of Putnam Theatrical Corp.,* 228 N.Y.S.2d 93, 99.

[4] Economic obsolescence is not in issue in this case. Economic obsolescence is a loss of value resulting from causes outside of the building itself, such as a change in the neighborhood, change in the zoning, drastic increase in the applicable tax rate. *Encyclopedia of Real Estate Appraising, Revised and Enlarged,* Friedman (1968).

this requirement be construed as an indication that we looked with disdain on this element of depreciation. The preliminary hearing was suggested so that a proper foundation be established before a real estate expert could suggest a figure which represented his conception of the amount of functional obsolescence present in a building.

Here the agency had for its expert a witness of unquestioned ability in the science of real estate appraisal. In the hearing held in the absence of the jury, he told the court that there was "substantial functional depreciation" present in the Franklin Street structure, that the structure was really two buildings—entirely different in degree, character, quantity and type of construction; that the two buildings made for a hodge-podge arrangement; that antiquated plumbing and out-of-date high ceilings abounded in the property; that the use and desirability of the structure was much less because it is composed of two separate buildings and that this incorporation made for an inefficient structure. He also declared that the renovations made to the structure by plaintiff in 1944 did not in any great degree alter the basic structure.

In a condemnation proceeding, the jury must determine the ultimate question of fact: what was the market value of plaintiff's property on the date of taking? Under our constitution, the owner of property acquired through eminent domain is entitled to receive "just compensation"— nothing more and certainly nothing less. The experts who appear either in behalf of the condemnor or the condemnee are in court to assist the jury by giving them the benefit of their knowledge on the issue which the fact-finders are to resolve. Here the agency's real estate expert had clearly demonstrated that functional obsolescence was an element to be presented to the jury for its consideration. If a new structure were to be reproduced on the Franklin Street lot serving the several functions that were carried on in the

old clubhouse of the Providence Chapter of the United Commercial Travellers, it is obvious that many changes would be made to insure that a new structure would embrace modern-building standards and techniques. In this day and age, a building housing a fraternal organization· is not built in the manner as it was back in the late 1800's or early 1900's—the time during which the plaintiff's buildings were erected.

The trial justice's refusal to permit the defendant to present to the jury evidence of functional obsolescence was prejudicial error.

The defendant's appeal is sustained and the case is remitted to the superior court for a new trial.

Motion for reargument denied.

*Arcaro, Belilove & Kolodney, Abraham Belilove,* for plaintiff.

*Timothy J. McCarthy, Paul F. Casey,* for defendant.