DECISION
Before the Court is Robert L. Newbert, Jr. and Mary Jane K. Newbert's (collectively "Plaintiffs") petition for relief from assessment of taxes assessed by Evelyn Spagnolo, Tax Assessor for the Town of Bristol, and John M. Day, Tax Collector for the Town of Bristol (collectively "Defendants"). Jurisdiction is pursuant to G.L. 1956 § 44-5-26.
 Facts and Travel
Plaintiffs are the record owners of property ("Property"), located at 18 Reliance Drive, Bristol, Rhode Island. In 2002, Defendants assessed Plaintiffs' Property at $1,184,490. After Plaintiffs complained that this assessment was excessive, the Town of Bristol Board of Assessment and Review thereafter reduced the valuation of the Property to $1,024,540. This figure was then used to compute the taxes on the Property for tax years 2002, 2003, and 2004. In three separate actions, which have since been consolidated, the Plaintiffs challenged the assessment for the above referenced tax years, claiming that the valuation of the Property was excessive, disproportionate, and unconstitutional under Article 1, Section 2 of the Constitution of the State of Rhode Island. A non-jury trial on the matter was held on April 26 and April 27, 2006.
At trial, Defendant Evelyn Spagnolo ("Spagnolo") testified that she has been the Tax Assessor for the Town of Bristol ("Town") since 1999 and is a certified general appraiser. Spagnolo informed the Court that in 2001, in her capacity as Tax Assessor, she hired the firm of Appraisal Resources to revaluate the property in the Town. According to Spagnolo, she and Appraisal Resources worked cooperatively to customize a Computer Assisted Methodology Analysis ("CAMA") appraisal methodology. Spagnolo instructed Appraisal Resources to use CAMA for the mass revaluation and to value the properties at 90% of their full and fair cash value.[1] Spagnolo maintained that while Appraisal Resources was given the task of conducting the appraisal, she personally reviewed all of Appraisal Resources' conclusions and retained the authority to make final decisions.
In opposition to the Town's assessment, Plaintiff Robert L. Newbert challenged the value that the Town calculated using the CAMA method. Mr. Newbert claimed that his Property has many deficiencies that were not accounted for in the Town's revaluation and submitted numerous photographs depicting the Property's alleged shortcomings.[2] (Plaintiffs' Exhibits 8-36.) Mr. Newbert further declared that his home is situated upon land with an unusually high water table, and as a result, his home does not have a full basement. Consequently, Mr. Newbert believes that the Town's assessment of his Property grossly exceeded the Property's full and fair cash value.
In support of their respective positions, both the Plaintiffs and the Defendants offered expert testimony. Some time after the Town's 2001 revaluation, the Plaintiffs hired William E. Coyle, III. ("Coyle"), a general certified appraiser, to appraise their Property. Coyle testified that he appraised the Property by performing a cost analysis[3] and a direct sale comparison.[4] Both Coyle's cost analysis assessment and comparable sales assessment are found in the written "Summary Appraisal Report." (Plaintiffs' Exhibit 4). While this report was not prepared by Coyle himself, Coyle did act as the Supervisory Appraiser.[5]
Under his cost analysis, Coyle valued the land to be worth $600,000. To estimate the value of the building, Coyle used figures from the data handbook Marshall Swift. Applying the values in Marshall Swift to the Plaintiffs' Property, Coyle testified that the cost to rebuild the Plaintiffs' home would be $82.43 per square foot for the dwelling, $24.50 per square foot for the basement, and $29.00 per square foot for the garage. Additionally, Coyle valued the Property's "extras" (fireplace, porch, etc.) to be worth $15,000. In total, Coyle calculated that the home would cost $299,111 to replace new, and after depreciation, has a replacement value of $233,396. Thus, the overall cost analysis value of the dwelling and land was $853,396. When calculating this value, it is important to note that Coyle's square footage measurements were derived from the interior dimensions of the Property, with reductions made for those areas with less than a six-foot high wall. Consequently, the square footage Coyle attributed to the Property was slightly smaller than the square footage used by Appraisal Resources when it conducted the initial assessment on behalf of the Town.[6]
Coyle also conducted a comparable sales analysis to appraise the Plaintiffs' Property. When performing this examination, Coyle compared the Plaintiffs' Property to three neighboring Bristol residences: 10 Reliance Drive, 5 Courageous Circle and 36 Reliance Drive. After making adjustments to the three comparable properties, Coyle valued the Plaintiffs' Property at $850,000. In making the adjustments, Coyle used the same square footage measurements for the Plaintiffs' Property that he had used in his cost analysis. However, while Coyle calculated the Plaintiffs' Property's square footage on interior dimensions deducted by areas with less than a six-foot wall, the square footage of two of his comparables was derived from exterior measurements, without a deduction for areas with less than a six-foot wall. Coyle also testified that while he had inspected the inside of the Plaintiffs' home, he had only inspected the inside of one of the comparative properties. Coyle did, though, receive information as to the quality of the interior and the number of amenities of the other two comparables through MLS listings.
On cross-examination, the Defendants highlighted certain inconsistencies in Coyle's comparative sales analysis. For instance, while fireplaces were valued at $1500 for two of the comparables, there were no adjustments made for fireplaces on the third comparable. Similarly, while Plaintiffs' Property is listed as having a two-vehicle attached garage, no adjustment was made to the comparable property at 5 Courageous Circle for the presence on that property of a three-vehicle detached garage. (Plaintiffs' Exhibit 4.)
Beyond his testimony on his cost analysis and comparable sales valuations, Coyle provided the Court with his general opinion of the Plaintiffs' Property. He testified that the Plaintiffs' home was of good quality, but that there were some deficiencies with its interior. In particular, Coyle noted that the Plaintiffs' home lacked many of the luxurious details of properties typical in the area. In his appraisal report, Coyle wrote:
 "Although the interior finish of the subject is average quality, most homes in the immediate area are good to excellent quality with custom features. Although the interior is attractive, it lacks the quality features one expects to find in the neighborhood. There is no central air conditioning and woodwork is plain, with no crown moldings. The kitchen is a small galley style room with laminate counters and a standard refrigerator, while typical homes in the area have gourmet kitchens and high end appliances, custom cabinets, and granite or Corian counters. The floor plan is awkward, with the dining room immediately inside the front door, two living room type areas, including one with a non-working fireplace. . . . Closet space is inadequate. There is only one full size closet in the building. The basement has a den, but almost 1/3 of the basement area has a low ceiling because of problems encountered during excavation of the site when the house was built." (Plaintiffs' Exhibit 4.)
Coyle also testified that while he was aware of the CAMA system and that he had used the method in the past, he felt that it was a more general method than either the cost analysis or comparative sales approach.
The Defendants rebutted Coyle's testimony and supported their assessment of the Property through an appraisal conducted in 2005 by Daniel E. Gablinske ("Gablinske").[7] Gablinske explained that he had been a real estate appraiser in Bristol, Rhode Island since 1993 and that prior to becoming an appraiser, he had worked as a real estate broker and had owned a residential construction business. Like Coyle, Gablinske appraised the Plaintiffs' Property using the cost analysis and comparative sales methodologies. In conducting the cost analysis, Gablinske did not rely on any figures found in the Marshall Swift handbook, claiming that the guide's figures are inaccurate for this area of the country. Instead, Gablinske testified that he based his cost of construction only on his own experience as a building contractor and from information he received from local builders and suppliers. With that information, Gablinske estimated that it would cost $185.00 per square foot to replace the dwelling, $15.00 per square foot for the basement, and $40.00 per square foot for the garage — a total of $662,030 as the estimated new cost of the structure. (Defendants' Exhibit B.) Gablinske then surmised that the Property has had $88,249 worth of depreciation since its construction, but has also had $50,000 worth of improvements. Id. When these figures were applied to Gablinske's cost of construction and added to his $500,000 estimated cost of the land, Gablinske's rounded value of the Property under the cost analysis was $1,124,000. Id.
Similar to Coyle's, though, Gablinske's measurements of the home were different from those Appraisal Resources used when it originally appraised the Property on behalf of the Town. While Coyle's dimensions were smaller than those used by Appraisal Resources, certain of Gablinske's measurements were significantly higher than Appraisal Resources' figures, with Gablinske listing the Property as containing a dwelling area of 3158 square feet, a basement of 1500 square feet and a garage of 484 square feet.Id. According to Gablinske, those figures were obtained through actual external measurements or actual house plans, which Gablinske claims were provided to him by Mr. Newbert.
In addition to the cost analysis, Gablinske appraised the Plaintiffs' Property by conducting a sales comparison with five neighboring properties: 192 Poppasquash Road, 25 Reliance Drive, 5 Courageous Circle, 10 Reliance Drive and 458 Poppasquash Road. Gablinske stated that he physically inspected each of the properties that were used in comparison, but that only three were inspected internally. As indicated on his appraisal report, Gablinske made adjustments in value to the comparable properties, both increasing and decreasing their sale prices based on the properties' features in comparison to Plaintiffs' Property. Gablinske acknowledged, however, that he listed some of the comparable properties as water-view, when in fact they are water-front, and his analysis does not reflect any adjustment for this variation amongst the properties. Furthermore, Gablinske recognized that he failed to make adjustments for the high water table on Plaintiffs' Property, for the fact that the basement is modified, and for the lack of many of the luxurious details contained in the comparable properties. Despite the lack of these critical adjustments, under the sales comparison approach, Gablinske valued the Plaintiffs' Property to be worth $1,125,000.
After hearing the testimony of the witnesses and considering the evidence submitted by the parties, this Court herein renders its decision.
 Law and Analysis
The Plaintiffs have essentially raised two arguments in their challenge of the Town's assessment. First, the Plaintiffs claim that the Town's assessment was excessive, as Coyle's appraisal demonstrates that the Property has a fair market value much less than that for which they were assessed. The Plaintiffs also contend that the assessment is unconstitutional under Article 1, Section 2 of the Constitution of the State of Rhode Island, particularly as it applies through § 44-5-12, because the Town is attempting to justify its assessment through methodologies (comparative sales and cost analysis) that were not applied to other properties in the Bristol. Further, Plaintiffs argue that it is unconstitutional for the Town to attempt to assess Plaintiffs' Property at 100% full and fair cash value — as is allegedly valued in Gablinske's appraisal — when all other properties were instructed to be assessed at 90% of their fair market value under the CAMA method.
Rhode Island General Law § 44-5-12(a) provides: "All property subject to taxation shall be assessed at its full and fair cash value, or at a uniform percentage of its value, not to exceed one hundred percent (100%), to be determined by the assessors in each town or city. . . ." The Supreme Court of Rhode Island has consistently held that "fair-market value means `that price the property would probably bring in a transaction in a fair market between a willing seller and a willing buyer.'" Harvard PilgrimHealth Care of New England, Inc. v. Gelati, 865 A.2d 1028, 1035
(R.I. 2004) (quoting Ferland Corp. v. Bouchard, 626 A.2d 210,215 (R.I. 1993)). Pursuant to § 44-5-12, municipal assessors have the discretionary authority to determine the fair market value of a property that is subject to their jurisdiction. Willow StreetAssociates LLP v. Bd. of Tax Assessment Review, City ofProvidence, 798 A.2d 896, 899 (R.I. 2002). In determining fair market value, the tax assessor is not bound by any particular formula, rule or method. Harvard Pilgrim, 865 A.2d at 1035
(citing Ferland Corp., 626 A.2d at 215). Moreover, "[t]ax assessors are entitled to a presumption that they have performed their acts properly until the contrary is proven." HarvardPilgrim, 865 A.2d at 1035; see also, Granoff Realty II, LPv. Rossi, 823 A.2d 296, 298 (R.I. 2003) ("tax assessors are entitled to a presumption that they have performed this official act [ascertainment of fair market value of real estate for tax purposes] properly").
If an aggrieved taxpayer seeks to challenge a municipality's tax assessment, "the burden of proof is on the taxpayer to establish that defendant assessor has set a value on the subject property that is greater than its full and fair cash value."Willow Street Associates LLP, 798 A.2d at 900. The standard for a taxpayer's challenge of a tax assessment is as follows:
 "In any tax assessment challenge, the assessor must first present his or her conclusion as to fair market value and the procedure used to arrive at such fair market value of the subject property. If the taxpayer challenges either the legality of the assessment or claims that the assessor used an inappropriate fair market value of the subject property, the burden will be on the taxpayer to present evidence of fair market value." deBourgknecht v. Rossi, 798 A.2d 934, 937
(R.I. 2002) (quoting Nos Limited Partnership v. Booth, 654 A.2d 308, 310 (R.I. 1995)).
Thus, in order for a plaintiff to succeed on his or her challenge of a tax assessment, the taxpayer must overcome the presumption that the assessor's appraisal was legal and must also present evidence of a fair market value. Cummings v. Shorey,761 A.2d 680, 687 (R.I. 2000); Kargman I, 113 R.I. at 700-01,325 A.2d at 546.
While the burden is clearly on the taxpayer to demonstrate that the assessor's valuation was flawed and did not reflect the fair market value of the property, as the Court stated in Nos LimitedPartnership, "the assessor must first present his or her conclusion as to fair market value and the procedure used to arrive at such fair market value of the subject property." (Emphasis added.) 654 A.2d at 310. Here, Defendants concluded that the fair market value of Plaintiffs' Property was $1,024,540 and that this value was derived through a CAMA analysis. However, while Spagnolo testified that she had contracted Appraisal Resources to revaluate the Town by using the CAMA methodology, there was little to no explanation as to how this method was applied or how the figures used in calculating with this method were determined. The Plaintiffs argue that the conclusion reached by the CAMA cannot be relied upon as there is no evidence as to how any values were derived, applied, or how the procedure was used.
The Supreme Court of Rhode Island has essentially held that while there is a presumption that the tax assessor has acted properly and even though the assessor has the discretion to select the method of appraisal, the tax assessor's method will not necessarily be upheld where the assessor fails to provide a breakdown of the statistical evidence used to calculate the assessment. Kargman v. Jacobs, 122 R.I. 720, 735,411 A.2d 1326, 1334 (1980) ("Kargman II"). Again, Defendants failed to provide a statistical explanation of the CAMA analysis. Furthermore, there are three generally recognized appraisal methods that may be used by appraisers in the estimation of fair market value: the sales comparison approach, the income capitalization approach, and the cost approach. See Allan Booth, Richard A. Licht, Robert D. Wieck, Property Tax Law inRhode Island 47 (1998). This Court, though, has not been made aware of any case in which the Supreme Court of Rhode Island accepted the CAMA analysis as a recognized method of residential appraisal. Coyle also testified that he had reservations about the CAMA method as it was less inclined to make market preference adjustments for such things as bedrooms, storage space, and basement space — in essence calling into question the reliability of the method. Taking the above into consideration, the Plaintiffs have overcome the presumption that the assessor's calculations and methodology were proper. Plaintiffs, though, must do more than discredit Defendants' method; the Plaintiffs must also satisfy their burden of establishing the Property's fair market value. Harvard Pilgrim, 865 A.2d at 1036
("[Taxpayer's] burden in this case required more than discrediting the city's depreciation scheme. . . . The plaintiff also had to prove the fair market value of its own property.") Here, this Court finds that the Plaintiffs have satisfied their burden of overcoming the presumption that the Town's appraisal was correct by providing this Court with a credible and reliable alternative fair market value.
"[A] trier of fact can accept the property valuation of one set of experts and reject that of another set of experts, particularly when he [or she] gives good reasons for doing so."Ferland Corp., 626 A.2d at 218 (quoting Kargman II,122 R.I. at 735, 411 A.2d at 1334). After hearing the testimony of both experts, this Court finds Coyle the more credible, convincing witness, one who has conducted a more accurate and detailed appraisal of the Property. Coyle provided the Court with a thorough explanation of how he determined his figures and arrived at his conclusions. For instance, Coyle explained that under the cost analysis, his values were not arbitrary but instead came from the recognized appraisal data handbook Marshall Swift. Coyle also explained how he valued the interior of the comparable properties by using data from MLS listings and fully described how his adjustments were made. This Court finds that Coyle's testimony was both professional and compelling. Accordingly, the Plaintiffs have presented sufficient evidence of sustaining their burden of providing an alternate fair market value.
The Defendants argue, though, that there were a number of flaws with Coyle's assessment and therefore, Plaintiffs could not have overcome the presumption that the Defendants' assessment was proper. For instance, Defendants' contend that Coyle's assessment is inconsistent, as Coyle failed to deduct $1500 from the sale price of one of his comparables — 5 Courageous Circle — to account for the presence of two fireplaces. This Court finds though that such a minor inconsistency is not fatal to Coyle's overall conclusion. In fact, had this deduction been made, the price of the comparable property would have been lower; thus, Coyle's appraisal of Plaintiffs' Property could have thereby been reduced — a result in stark contrast to the position taken by the Defendants.
The Defendants also heavily criticize the measurements used by Coyle in conducting his appraisal, as well as Coyle's admission to not having personally inspected the interior of all of his comparable properties. As it pertains to the interior of Coyle's comparables, while Coyle may not have physically entered every home, his estimates were not premised on mere conjecture; rather Coyle fully explained how his calculations were based on figures which he received from MLS listings.[8] This Court finds that Coyle sufficiently explained how the analysis was performed and that using the MLS listings did not diminish the appraisal's reliability in any way.[9]
The Defendants' criticism of the square footage used by Coyle is equally unconvincing. Defendants are critical of the fact that Coyle's dimensional measurements are less than those measurements used by Appraisal Resources for the Town's initial assessment of the Property and that Coyle did not measure the comparables in the same manner as Plaintiffs' Property. While Defendants thus feel that Coyle attempted to reduce the estimated value of Plaintiffs' home by using smaller dimensions than those which the Property was originally appraised at, Defendants fail to highlight that their appraiser, Gablinske, valued the Plaintiffs' Property using dimensions that were larger than those found in the Town's records. Thus, both parties' appraisals were based on measurements that did not comport with the Town's original figures. Importantly though, as was discussed above, the Defendants have not provided any explanation as to how they calculated their figures or arrived at their conclusions using the CAMA method. In contrast, Coyle accurately explained how he derived the dimensions of the properties. As Appraisal Resources measurements have not been shown to be conclusive (or accurate), this Court is free to accept the data provided by Coyle in his appraisal report and accept his valuation over that provided by Gablinske.[10]
When the taxpayer has supplied the Court with sufficient evidence of a fair market value that is different for the municipality's assessed value, and where the presumption that the municipality has acted properly has been overcome, the Court will look to the evidence the assessor has provided in support of its assessment. See generally, Kargman II, 122 R.I. 720,411 A.2d 1326. Here, in contrast to Coyle's testimony, the Court had serious questions regarding the credibility and reliability of Gablinske's appraisals of the Property. The Supreme Court of Rhode Island has held that a trial justice may disregard the testimony of an appraisal expert when the expert relies solely on his or her "experience" and fails to provide factual and statistical support for the conclusions he or she has reached.See Harvard Pilgrim, 865 A.2d at 1036 (citing Kargman I,113 R.I. at 703, 325 A.2d at 547) (Trial judge may give no weight to expert's testimony when there is a lack of specificity pertaining to the expertise upon which expert relied); FerlandCorp., 626 A.2d at 214 ("If the expert fails specifically to set forth the factual basis for his conclusions, the court must disregard his testimony"). Gablinske did not provide any statistical sources from which he arrived at cost of replacement, and simply testified that he relied on his expertise as a contractor. In contrast, Coyle's figures came from a recognized handbook on the replacement costs of property, his research regarding the elements of this particular situation, and his years of experience doing appraised (sic) work. Therefore, this Court uses its discretion to reject the testimony of Gablinske and accept the calculations made by Coyle as to the replacement value of the Property.
Furthermore, this Court has grave concerns regarding Gablinske's comparable sales analysis. In particular, Gablinske's failure to make adjustments for the difference between water-view and water-front property alerts the Court to question the comparable sales price. As Gablinske acknowledged, several of the properties which were used as comparables were actually water-front properties, yet this fact was not reflected in his appraisal report, nor were any adjustments made to account for this difference from Plaintiffs' Property. This lack of adjustment surprises the Court as one of the "[s]ignificant factors that affect[s] comparability include[s] location and character of the property. . . ." Conti v. Rhode Island EconomicDev. Corp., No. 2004-109-A., slip op. at 21 (R.I., filed July 11, 2006) (quoting Serzen v. Director of the Dep't of Envtl.Mgmt., 692 A.2d 671, 674 (R.I. 1997) (citations omitted)). At trial Gablinske attempted to explain that no adjustment was necessary as some individuals prefer water-view property to water-front property. This Court, however, finds this argument disingenuous and unconvincing, as water-front property is consistently found to have a higher worth. This Court instead finds credible Coyle's analysis that adjusted the value of the comparable properties by several tens of thousands of dollars depending on the location of the property. As these adjustments were not made to Gablinske's comparables, the reliability of his comparable sales analysis is called into doubt because such adjustments could have significantly altered Gablinske's ultimate conclusion as to the value of the Property. Additionally, Gablinske admitted that he did not factor in the problems Plaintiffs have encountered with their water table, nor did he adjust for the dearth of luxury items in comparison to those in other homes in the area. Gablinske's failure to make these adjustments troubles this Court, which ultimately finds Gablinske's assessment not to be a credible valuation in support of the Defendants' assessment.
After hearing all the testimony and conducting a careful, independent review of all the evidence before it, this Court finds that the Plaintiffs' have overcome the presumption that the Town's assessment was proper and have demonstrated that the assessment was excessive. The Town has failed to show how it calculated its data and reached its conclusions under the CAMA analysis; in contrast, Plaintiffs have presented a credible and meticulous accounting of fair market value. Defendants' appraisal is questionable as Defendants' expert merely relied on his own "expertise," such as that is, in gathering values for his cost analysis and failed to make adjustments for the differences in value between water-front and water-view property when computing his comparable sales analysis. Finding Plaintiffs' expert to be highly credible and persuasive, this Court accepts Coyle's appraisal of fair market value.[11]
 Conclusion
For the above reasons, this Court finds that the Plaintiffs' Property has been excessively assessed. Accepting Plaintiffs' calculation of fair market value, this Court determines that the fair market value for tax years 2002, 2003, and 2004 to be $853,396. Counsel shall submit to this Court for entry an agreed upon order and judgment on behalf of the Plaintiffs consistent with this Decision.
[1] Spagnolo acknowledged at trial that in a separate case,Schwartz v. Spagnolo, (PC 03-0087), she had given deposition testimony that she had provided Appraisal Resources with instructions to value the properties at 90% of their full and fair market value.
[2] For example, Mr. Newbert testified that unlike neighboring homes in the area, his Property does not contain many luxurious items such as built-in bookshelves, luxurious bath fixtures, marble floors, top-line appliances, swimming pools, or water-front access.
[3] In a cost analysis, the appraiser attempts to determine the reproduction cost of the property, which is the cost "that would be required to duplicate a building or improvement with a new property or replica, made of the same or basically similar materials." Kargman v. Jacobs, 113 R.I. 696, 699 n. 4,325 A.2d 543, 545 n. 4 (1974). ("Kargman I"). This value is calculated by the following formula: "[E]stimated reproduction or replacement cost of the building new, less estimated accrued depreciation, if any, plus the estimated land value." Id.
(citing Travellers Bldg. Ass'n v. Providence RedevelopmentAgency, 106 R.I. 83, 256 A.2d 5 (1969)).
[4] Under the sales comparison method, the appraiser compares the subject property with the prices paid at open market for substantially similar or comparable properties. Serzen v. Dep'tof Environmental Management, 692 A.2d 671, 674 (R.I. 1997). "Significant factors that affect comparability include location and character of the property, proximity in time of the comparable sale, and the use to which the property is put." Id.
(quoting Warwick Musical Theatre, Inc. v. State, 525 A.2d 905,910 (R.I. 1987)). The Supreme Court of Rhode Island has held that "comparable sales should be used in the valuation of real estate in the event that such comparable sales are available. Ajootianv. Hazard, 488 A.2d 413, 416 (R.I. 1985).
[5] The report was actually prepared by Mary Mahoney, who is also a state certified residential real estate appraiser.
[6] Coyle's Summary Appraisal Report lists the Plaintiffs' dwelling as 2893 square feet, the basement as 1290 square feet, and the garage as 484 square feet. (Plaintiffs' Exhibit 4.) In contrast, Appraisal Resources listed the Property as having 3039 square feet of living area, a basement area of 1290 square feet, a finished basement of 225 square feet and a garage of 484 square feet. (Plaintiffs' Exhibit 7.)
[7] Spagnolo testified that under its contract with the Town, Appraisal Resources had agreed to make itself available to defend the values it had calculated; however, no representative from Appraisal Resources was called to defend the CAMA analysis, and instead, the Defendants relied on Gablinske's appraisals.
[8] This Court finds curious that Defendants would question Coyle's results for failing to physically inspect all of his comparable properties when Defendants themselves admit that while Gablinske internally inspected three of his comparable properties, two properties were not so inspected and no explanation was provided as to how the estimates of those properties were derived. In contrast, Coyle explained that he arrived at his calculations using data from MLS listings.
[9] Additionally, Mr. Newbert testified that he had been inside several of his neighbors' homes and could account for the many luxurious details of which his home was lacking.
[10] The Defendants also made other arguments in attempt to discredit Coyle's appraisal. For example, Defendants argued that Coyle's comparative sales analysis is misleading as Coyle only examined features that pushed the values of the comparable properties down. However, for one of his comparable properties, Coyle did make an upward adjustment to account for the fact that the comparable had a smaller living area than the Plaintiffs' home. Alternatively, Defendants argue that the Court should reject Coyle's comparative sales analysis because Gablinske testified that appraiser generally examine property that has been adjusted in the range of 15-25% and that the adjustments made to Coyle's comparables are outside this range. This Court, though, accepts Coyle's explanation that the adjustment bracket is not a strict requirement for appraisals not made for lending institutions. This Court also notes that out of Coyle's three comparables, two adjustments were extremely close to falling into Gablinske's suggested bracket (25.2% and 14.8% net adjustment from sales price). Further, while Gablinske's adjustments all fell within the 15-25% adjustment range, this Court questions whether such would have been the case had Gablinske made adjustments to differentiate between water-view and water-front property.
[11] As this Court finds that the Defendants' assessment under the CAMA analysis was excessive, and as that assessment is hereby rejected, this Court need not reach a decision as to Plaintiffs' Constitutional arguments. Without resolving those issues at this time, this Court will note that while Plaintiffs complained that Gablinske's assessed their Property for 100% of its full and fair cash value and the Town's original assessment was for 90% of the full and fair cash value, the Defendants are not attempting to assess Plaintiffs' Property at Gablinske's full appraisal amount. In fact, as Defendants point-out, the $1,024,540 for which the Plaintiffs were actually assessed is only 91% of Gablinske's assessment value under the comparative sales analysis, $1,125,000.